IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                Plaintiff,<br>vs.<br><br>ROBERT BEN DECKERT<br><br><br>                Defendant. | No.1:18-CR-0019-MAC-ZJH |

**REPORT AND RECOMMENDATION DENYING DEFENDANT'S**
**<u>MOTIONS TO SUPPRESS</u>**

Pending before the Court is Defendant Robert Deckert's ("Deckert") "Motion for Suppression of Evidence" (Doc. No. 38) and "Motion to Suppress the Confession and/or Statements" (Doc. No. 39). Deckert seeks to suppress evidence obtained as a result of search of a travel trailer he occupied and also requests the exclusion of statements he made to law enforcement. On September 25, 2018, United States District Judge Marcia A. Crone referred these motions to the undersigned United States magistrate judge for consideration and entry of proposed findings and a recommended disposition. (Doc. No. 41, citing 28 U.S.C. § 636(b)(1)(B)); E. D. TEX. CRIM. R. 59(d). On October 3, 2018, the undersigned held a hearing on both motions. Because Deckert lacks standing to contest the search of the travel trailer, the "Motion to Suppress Evidence" (Doc. No. 38) should be denied. Moreover, Deckert's "Motion to Suppress the Confession and/or Statements" (Doc. No. 39) should also be denied, because he was not deprived of his right to counsel nor were his statements otherwise involuntarily.

# I. FACTS

Sergeant Anthony Flower with the Hardin County Sheriff's Department testified for the Government at the suppression hearing. Sgt. Flower stated that he received a call from Carolyn Morrow on February 6, 2018, regarding a travel trailer on her property. Morrow wanted an officer to come investigate the trailer because she had not given anyone permission to keep the travel trailer on her property. When Sgt. Flower arrived, he located the trailer in her pasture. Next to the trailer, he noticed Deckert standing next to a white Chevrolet Camaro. After questioning from Sgt. Flower, Deckert stated that the trailer belonged to Michael Durr, Morrow's son, and he was living there while he went through a divorce. However, Morrow denied her son owned the trailer. Sgt. Flower testified that Deckert became nervous, and he detained him while he called for a back-up patrol unit.

At that time, Sgt. Flower called Deputy Kendall Leonard, Jr. with the Hardin County Sheriff's Department for assistance. After Dep. Leonard arrived, he and Sgt. Flower allowed Deckert to enter the trailer to retrieve some personal items before he vacated the property. Deckert told the officers that there was no one else in the trailer. However, after Deckert left, Sgt. Flower heard noises from inside the trailer. After the officers knocked on the door, a woman called out and then answered the door. Sgt. Flower testified that Deckert told her to hide under the bed. As a precaution, they conducted a protective sweep of the trailer to ensure no one else was present. During the sweep, marijuana residue and other drug paraphernalia were observed in plain view.

Sgt. Flower looked around the outside of the trailer once again and noticed a void sticker indicating that the VIN had been removed. He then called Sergeant Matthew Walters with the Southeast Texas Auto Theft Task Force to further investigate the ownership of the trailer. After Sgt. Walters arrived, he observed three after-market locks on the travel trailer. Government

Exhibits B, C, D, E, and F show pictures of the travel trailer and the locks. Specifically, Exhibit B illustrates a full view of the brand new Jayco travel trailer. Exhibit C shows the original manufacturer's locking mechanism punched out, and Exhibit D shows that same lock on the ground next to the trailer. Exhibits E and F also depict after-market locks not normally installed on a brand new travel trailer. These facts indicated to Sgt. Walters that the trailer may be stolen. Upon further investigation, a VIN sticker was located on the trailer, and he was able to confirm through department records that it was in fact stolen.

Based upon this information, the officers re-entered the trailer to try to determine its owner. During this re-entry, they found five firearms and methamphetamine—the physical evidence Deckert seeks to exclude. It was later confirmed that the trailer belonged to Sherrod I-10 RV Sales located in Vidor, Texas.

Several days later, on February 26, 2018, Deckert was arrested by Lumberton police officers on a federal arrest warrant and was brought into the Jefferson County Sheriff's Department for questioning. Agent Shawn Wilson, an ATF Federal Task Force in the Jefferson County Sheriff's Department, testified that he interviewed Deckert along with ATF Special Agent Michael Badowsky. An audio recording of the interview was introduced into evidence as Government's Exhibit G. In that interview, Agent Badowsky read Deckert the *Miranda* warnings from a pre-printed card marked as Exhibit H. Deckert stated that he understood his rights. It was also explained to Deckert that no promises were being made to him, but his level of cooperation would be reported to the prosecutor's office.

During the interview, Deckert asked if he could call his attorney's office. Agent Badowsky asked him if that meant he was finished talking with them. Deckert stated that he only wanted to let his attorney's secretary know where he was located, because they were

expecting him to come to their office to make a payment that day. Deckert spoke with his attorney's secretary and told her that he would have someone come make the payment. He also mentioned that he had been arrested. However, he never stated on the phone call that he was presently being interviewed by officers at the sheriff's office. After the phone call, Agent Wilson asked Deckert if he wanted to continue the interview and he then continued his discussion with the officers.

## II. RELEVANT LAW AND DISCUSSION

In the two motions to suppress, Deckert claims: (1) the warrantless search of the travel trailer violated the Fourth Amendment; and (2) law enforcement obtained an oral statement from Deckert (a) without advising him of his Constitutional and statutory rights; (b) by failing to terminate the interview despite his request for counsel; and (c) obtained the statements through fraudulent representations and promises.

### A. Search of the Jayco Travel Trailer

*1. Standing to contest the search of the travel trailer*

The Fourth Amendment prohibits "unreasonable searches and seizures" and assures "the right of the people to be secure in their persons, houses, papers, and effects." U.S. CONST. IV. However, a defendant bears the burden of establishing standing to challenge a search under the Fourth Amendment by showing that he has a privacy or property interest in the premises searched or the items seized which is sufficient to justify a reasonable expectation of privacy. *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992) (citations omitted). The Supreme Court has recently reaffirmed that there is not "a single metric or exhaustive list of considerations" to determine whether one has a reasonable expectation of privacy. *Byrd v. United States*, 138 S. Ct. 1518, 1527, 200 L. Ed. 2d 805 (2018). However, expectations of

privacy by law "must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id*. (quoting *Rakas v. Illinois*, 439 U.S. 128, 144, n.12 (1978)). In general, one of the main rights attaching to property is the right to exclude others—thus, it follows that one who owns or *lawfully* possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude. *Id*. (emphasis added). "*Rakas* makes clear that wrongful presence at the scene of a search would not enable a defendant to object to the legality of the search. A burglar plying his trade in a summer cabin during the off season, for example, may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as legitimate. Likewise, a person present in a stolen automobile at the time of the search may [not] object to the lawfulness of the search of the automobile. No matter the degree of possession and control, the car thief would not have a reasonable expectation of privacy in a stolen car." *Byrd*, 138 S.Ct. at 1529 (citing *Rakas*, 439 U.S. at 141) (internal citations and quotations omitted).

In this instance, Deckert likewise had no reasonable expectation of privacy in the travel trailer. The travel trailer was stolen property that belonged to a local business—Sherrod I-10 RV Sales. He also did not own or have permission to be on the property that the trailer was located. Because Deckert did not lawfully possess or control the trailer or the property where it was located, he has not met his burden to show he has standing to challenge the search of the travel trailer under the Fourth Amendment. Consequently, Deckert's motion to suppress the search of the trailer and the evidence recovered from it should be denied.[1]

---

[1] Because Deckert has no standing to contest the search, the undersigned does not need to address whether the officer's search was justified under exigent circumstances or any other exception to the warrant requirement. *See United States v. Johnson*, 871 F. Supp. 2d 539, 548 (W.D. La 2012) ("Because the standing argument fully

### B. Post-Arrest Custodial Interview

In *Miranda v. Arizona*, the United States Supreme Court found "that the statements given by a defendant during a custodial interrogation are inadmissible at trial unless, prior to questioning, the suspect '[is] warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' " *DeCossas v. St. Tammany Parish School Board*, No. 16–3786, 2017 WL 3971248, at *11 (E.D. La., Sept. 8, 2017) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). A suspect may, however, waive his *Miranda* rights, provided his waiver is made voluntarily, knowingly and intelligently. *Miranda*, 384 U.S. at 444.

With regard to the right to counsel when under interrogation, officers must cease questioning if a suspect makes a clear, unambiguous, and unequivocal request for an attorney. *See Davis v. United States*, 512 U.S. 452, 459 (1994) ("maybe I should talk to a lawyer" did not invoke the right to an attorney). However, if the request does not meet these requirements or the accused himself initiates further communication with the officer, there is no requirement that the questioning cease, nor is there an obligation for the officer to clarify an ambiguous comment of the accused. *Id.*; *United States v. Montes*, 602 F.3d 381, 385 (5th Cir. 2010).

In this case, as noted in the factual discussion, Agent Badowsky read Deckert his *Miranda* rights to which Deckert acknowledged. Further, he was allowed to contact his attorney when he requested to do so. The following is an excerpt of the audio recording marked as Government's Exhibit G:

> Deckert: Can we please call my lawyer and tell him that I am here?
> Badowsky: Yeah, hold on one second.
> (Agent Wilson can be heard opening a door and walking into the room.)
> Badowsky: He just said that he wants to call his lawyer.

---

resolves the defendant's motion with respect to the search of the vehicle, the undersigned will not address the other points raised in opposition by the government.").

| | | |
|---|---|---|
| Wilson: | | What about? |
| Deckert: | | Just to tell him where I am at, so they ain't looking for me. Well, really it is the secretary. Brian is busy all the time. |
| Wilson: | | Okay, so basically what you are saying is that you're ready to conclude what we've got and go talk to your lawyer? |
| Deckert: | | No, I just want to tell him that I am here. That's all I want to do, or just tell Lynette, and then I'd like to call my baby momma and tell her I'm not going to make it. |

(The call is made on speaker phone.)

. . .

| | | |
|---|---|---|
| Wilson: | | Do you want to continue talking or do you want to wait until you can talk to him [your attorney]? |
| Deckert: | | I don't know what his real name is. [referring to a drug supplier, and the conversation immediately proceeds as before] |

The officers asked Deckert at least twice if he wanted to discontinue the interview—once before the phone call and again after the phone call. Deckert declined and continued to speak with the officers. Accordingly, Deckert voluntarily, knowingly, and intelligently waived his *Miranda* rights. Moreover, he did not make a clear, unambiguous, and unequivocal request for an attorney. In fact, he clarified that he only needed to speak with his attorney's secretary to let them know of his whereabouts, because he knew that his attorney would be busy and unavailable. The purpose of the call was not to obtain legal advice prior to or during questioning.

Deckert also alleges in his motion that, according to *Miranda*, the officers should have notified him of his right to terminate the interview once it began. However, that right is not one of the required *Miranda* warnings. *See United States v. Harper*, No. 4:07CR244(4), 2008 WL 4621129, at *1 (E.D. Tex. Oct. 16, 2008) (finding that warning of the right to terminate the interview is not a required notification of a defendant's *Miranda* rights). Although it is not required by *Miranda* or federal law, the right terminate a custodial interrogation is a required warning only under Texas state law. *See United States v. Sedeada*, 879 F. Supp. 52, 53 fn 2 (E.D. Tex. 1995); TEX. CODE CRIM. PROC. ART. 38.22 § 2(a)(5).

7

Lastly, Deckert asserts that his statements were a product of fraudulent representations and promises made by the officers. However, the audio recording marked as Exhibit G contains no such representations or promises. To the contrary, Agent Wilson specifically told Deckert that he was making no promises to him in exchange for his interview. Instead, he stated that he would only report Deckert's cooperation level.

For all of the reasons discussed above, the motion to suppress Deckert's confession and/or statements should likewise be denied.

### III. RECOMMENDATION

Deckert lacks standing to contest the February 6, 2018 search of the Jayco travel trailer. Consequently, the evidence obtained as a result of that search should be admissible. Further, the post-arrest interview on February 26, 2018, was conducted lawfully with the appropriate *Miranda* warnings, and Deckert's statements were made voluntarily, free from undue coercion, promises, or false representations. Consequently, the district court should **DENY** both of the Defendant's Motions to Suppress (Doc. Nos. 38, 39).

### IV. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within five (5) days[2] after being served with a copy of this report, and (4) no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(2); Local Rule CV-72(c). A party who objects to this report is entitled to a *de novo* determination

---

[2] Due to the trial setting in this case, the objections period has been shortened to five (5) days. The undersigned has notified the parties of this shortened deadline.

by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within seven (7) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, (*see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988)), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 10th day of October, 2018.

_____
Zack Hawthorn
United States Magistrate Judge